## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO
### CIVIL No. _____

| | |
|---|---|
| **GARCIA PUENTES, ANA KAREN** §<br>§<br>§<br>§<br><br>Petitioner §<br>§<br>v. §<br>§<br>§<br>DORA CASTRO, in her official capacity §<br>Warden of the Otero Detention Center; §<br>§<br>§<br>§<br>§<br>MARY DE ANDA-YBARRA in her official §<br>capacity as Field Office Director of ICE §<br>Enforcement and Removal Operations El Paso §<br>Field Office; §<br>§<br>§<br>MARKWAYNE MULLIN, in his official capacity §<br>as Secretary of the Department of Homeland §<br>Security; §<br>§<br>§<br>TODD BLANCHE, in his official capacity as §<br>Acting Attorney General of the United States, §<br>§<br>Respondents. §<br>§ | **PETITION FOR**<br>**WRIT OF HABEAS CORPUS**<br>**PURSUANT TO 28 U.S.C §2241** |

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I.   **INTRODUCTION**

Petitioner ANA KAREN GARCIA PUENTES (A-Number: 241-368-160) has been unlawfully detained by Immigration and Customs Enforcement ("ICE") in violation of the Fifth Amendment to the United States Constitution, the Immigration and Nationality Act ("INA"), and binding federal precedent. Petitioner respectfully petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking her immediate and unconditional release from custody at the Otero County Processing Center, Chaparral, New Mexico, or in the alternative, an individualized bond hearing before a neutral adjudicator where the Government bears the burden of demonstrating, by clear and convincing evidence, that her continued detention is justified.

What makes this case particularly egregious is the manner and stated justification of Petitioner's detention. On June 10, 2026, Petitioner appeared voluntarily and in good faith at a routine ICE check-in appointment, a scheduled supervision reporting obligation she had never once failed to honor. Rather than conducting a standard check-in, ICE officers proceeded to detain her on the spot. Both Petitioner and her counsel, present at the time, repeatedly and explicitly requested that ICE officers provide the legal basis for the detention. ICE officers were unable to articulate any lawful justification. The sole reason offered by ICE officers for the detention was that Petitioner's Immigration Court hearing was not until November 17, 2027,  a date they characterized as "too far away."

This justification is not only legally insufficient,  it is constitutionally alarming. The scheduling of Immigration Court proceedings is the exclusive province of the Immigration Court, an executive tribunal operating under the authority of the Executive Office for Immigration Review ("EOIR"). ICE, as an enforcement agency of the Department of Homeland Security, has no jurisdiction, authority, or legal standing to modify, accelerate, or otherwise interfere with hearing dates established by the Immigration Court. The notion that ICE may detain a fully compliant, law-abiding petitioner because her court-ordered hearing date is deemed inconveniently distant constitutes a direct and unlawful encroachment upon the jurisdiction of the Immigration Court. Such interference is not merely improper, it is moot as a matter of law, as ICE possesses no adjudicative authority whatsoever over Immigration Court scheduling.

Prior to her unlawful detention, Petitioner maintained a perfect record of compliance with her Order of Supervision, never missing a single scheduled appointment, and held an active court-ordered Notice of In-Person Hearing scheduled for November 17, 2027, in a consolidated family case. At no point has any neutral adjudicator denied bond to Petitioner. She has never been found to be a flight risk. She has never been found to pose a danger to the community. She appeared voluntarily at the very appointment at which she was detained.

The Constitution does not permit the executive branch to detain a fully compliant individual, without legal justification, in order to manipulate the timeline of judicial proceedings over which it has no jurisdiction.

## II. JURISDICTION AND AUTHORITY

1. Jurisdiction lies under 28 U.S.C. §2241 and 28 U.S.C. §1331.

2. The Tenth Circuit recognizes habeas jurisdiction over challenges to the legality and constitutionality of immigration detention. See Zadvydas v. Davis, 533 U.S. 678 (2001); Arostegui-Medina v. Garland, 75 F.4th 1132 (10th Cir. 2023).

## III. STATEMENT OF FACTS

### 1. Background and Family Ties

3. Petitioner is 25 years old and has resided in the United States for 2 years, since 2024.

4. Petitioner has no criminal record.

5. Prior to her detention on June 10, 2026, Petitioner had maintained a perfect and unblemished record of compliance with all immigration obligations. She had never missed a single ICE check-in appointment, attending each and every one voluntarily and without fail. She has no criminal record. She lived openly and transparently in the United States, fully cooperative with immigration authorities at every stage of her supervision.

### 2. Detention Under §1225(b)(2)(A)

6. On June 10, 2026, ICE apprehended Petitioner during a routine, scheduled ICE check-in

appointment that she attended voluntarily and in good faith, and took her into custody at the Otero County Processing Center, Chaparral, New Mexico, without providing any legal basis or justification for the detention, despite repeated requests by Petitioner and her counsel.

7. The sole basis offered by ICE officers at the time of Petitioner's apprehension was that her Immigration Court hearing was not scheduled until November 17, 2027 — a date they characterized as too far away. This purported justification is not only legally insufficient on its face, but reveals a deliberate and impermissible encroachment by ICE upon the exclusive jurisdiction of the Immigration Court.

8.The authority to schedule, modify, continue, or otherwise manage Immigration Court proceedings is vested solely in the Executive Office for Immigration Review ("EOIR") and its Immigration Judges, operating pursuant to 8 C.F.R. § 1003.1 et seq. ICE, as an enforcement component of the Department of Homeland Security, possesses no adjudicative authority over Immigration Court proceedings and has no lawful basis to use the power of detention as a mechanism to accelerate, alter, or otherwise interfere with judicially established procedural timelines. Such conduct constitutes an ultra vires act that undermines the structural integrity of the immigration adjudication system and violates the constitutional principle of separation of powers.

9. Petitioner has resided continuously in the United States since February 2024, has never violated any condition of her Order of Supervision, has never missed a single ICE check-in appointment, has no criminal record of any kind, and had an active court-ordered consolidated family case pending before the Immigration Court at the time of her detention.

10. Petitioner has been continuously detained at Otero County Processing Center.

### 3. Current Removal Proceedings and Likelihood of Relief

11. Petitioner is in removal proceedings before the El Paso Immigration Court.

12. Her next individual calendar hearing is scheduled for November 17, 2027. ICE has provided no timeline for completion of proceedings.

13. Petitioner has applied for Asylum  I-589 Application For Asylum And For Withholding Of Removal And Cat currently pending adjudication before the Immigration Court, in a consolidated family case with a court-ordered hearing scheduled for November 17, 2027.

**4. Harm from Continued Detention**

14. Petitioner's continued detention causes severe and irreparable harm.

15. **Inability to Defend Against Removal:** Petitioner is unable to gather documentary evidence for her relief application while in custody; she has limited access to her attorney while in ICE custody, she cannot locate witnesses or obtain declarations needed to defend her case.

16. Each day of continued detention exacerbates these harms.

## IV. CLAIM FOR RELIEF

### VIOLATION OF FIFTH AMENDMENT DUE PROCESS

17. Petitioner incorporates all preceding paragraphs.

18. The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

19. This guarantee extends to all persons within the United States, including noncitizens in removal proceedings. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("Once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent."); Reno v. Flores, 507 U.S. 292, 306 (1993).

20. Petitioner's detention violates both substantive and procedural due process in multiple, reinforcing ways.

**A. Substantive Due Process: Indefinite Detention Without Individualized Determination**

21. The Supreme Court has held that indefinite or prolonged civil detention raises "serious constitutional concerns." Zadvydas, 533 U.S. at 690.

22. To avoid these concerns, the Supreme Court has "read an implicit limitation" into

immigration detention statutes requiring individualized determinations and temporal limits. Id. at 689.

23. Petitioner faces indefinite detention with no end in sight:

a. Section 1225(b)(2)(A) contains no temporal limitation whatsoever;

b. The statute provides for detention "pending a proceeding under section 1229a," which could last months or years;

c. Petitioner's removal proceedings have no definite conclusion date and could last months or over a year for the adjudication and appellate process to conclude;

d. Cases involving applications for relief and appeal to the Board of Immigration Appeals routinely take 9–24+ months to resolve;

e. ICE has provided no timeline for completion of proceedings or release from detention.

24. Petitioner's detention is troubling because:

a. She is detained during, not after, removal proceedings, when she is actively pursuing relief;

b. The proceedings themselves could last indefinitely;

c. She has had no hearing whatsoever to determine the necessity of detention; and

d. She faces categorical detention based on a recently-changed legal classification, not individualized facts.

25. Respondents have made no individualized determination that Petitioner's continued detention is necessary to prevent flight or danger to the community, which are the only constitutionally permissible bases for preventive civil detention. United States v. Salerno, 481 U.S. 739, 748 (1987).

26. To the contrary, all evidence demonstrates Petitioner poses neither risk:

a. Petitioner has resided in the United States for 2 years without a single criminal arrest, charge,

or conviction;

b. Petitioner maintained stable residence throughout her time in the United States;

c. Petitioner had zero violations of any law or immigration condition;

d. Petitioner has deep family ties to the United States, including her brother-in-law, who is an active duty member of the United States Army.

e. No individualized assessment has ever identified Petitioner as a flight risk or danger.

27. Petitioner's detention is purely arbitrary, predicated solely upon the temporal distance of her court-ordered Immigration Court hearing date of November 17, 2027 — a justification that is legally baseless and constitutionally impermissible — and not upon any individualized finding that she personally poses a flight risk, a danger to the community, or any other legitimate ground warranting detention.

28. This arbitrary and indefinite detention, effectuated without any individualized assessment, without any articulable legal basis, and in direct interference with pending proceedings before the Immigration Court, violates substantive due process under the Fifth Amendment to the United States Constitution.

### B. Procedural Due Process: Complete Deprivation of Hearing

29. The Fifth Amendment requires meaningful procedural protections before deprivation of physical liberty—one of the most fundamental interests protected by the Constitution.

30. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), courts apply a three-part balancing test to determine what process is due: (1) the private interest affected by government action; (2) the risk of erroneous deprivation through procedures used and the probable value of additional safeguards; and (3) the government's interest, including the fiscal and administrative burdens of additional procedures.

31. Applying the Mathews balancing test here, the constitutional scales tip overwhelmingly in favor of providing Petitioner a hearing.

32. **First Factor: Private Interest.** Petitioner's private interest is among the most fundamental protected by the Constitution—physical liberty and the ability to remain with her family:

a. Petitioner faces ongoing separation from her family;

b. She has lost her livelihood and ability to support her family;

c. She cannot care for her family who depends on her;

d. Her detention prevents her from effectively defending against removal;

e. Each day of detention causes harms that cannot be remedied through monetary compensation.

33. **Second Factor: Risk of Erroneous Deprivation.** The risk of erroneous deprivation here is not merely substantial—it is 100%:

a. Respondents have made zero individualized determination about Petitioner;

b. No decision-maker has considered Petitioner's individual circumstances, ties, compliance history, or lack of flight risk;

c. Additional procedural safeguards—a hearing before a neutral decision-maker—would dramatically reduce this risk at minimal cost;

d. Such hearings occur routinely under §1226(a) for similarly situated individuals and impose minimal burden on the system.

34. **Third Factor: Government Interest.** The government's interests are preventing flight and protecting public safety. However:

a. These interests are not served by detaining someone who has proven through years of law-abiding conduct that she will appear and poses no danger;

b. A hearing would impose minimal administrative burden, as ICE routinely conducts such

hearings under §1226(a);

c. The government's interest in uniform application of §1225(b)(2)(A) does not outweigh fundamental liberty interests.

35. The Mathews balancing test overwhelmingly favors providing Petitioner a hearing before a neutral decision-maker with authority to order release upon a showing that she is not a flight risk or danger.

36. At minimum, due process requires:

a. Notice of the reasons for continued detention;

b. An opportunity to present evidence that Petitioner is neither a flight risk nor a danger to the community;

c. A hearing before a neutral decision-maker (not ICE, which is the prosecuting/detaining authority); and

d. Authority in that decision-maker to order release on bond or conditions if Petitioner meets her burden.

37. Respondents have provided none of these procedural protections. Petitioner has received no hearing, no opportunity to present evidence of her ties and compliance, and no review by any neutral arbiter.

38. This complete deprivation of process violates the Fifth Amendment.

### C. Equal Protection: Arbitrary Classification

39. The Fifth Amendment's due process clause incorporates equal protection principles applicable to federal government action. Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

40. Equal protection requires that the government treat similarly situated individuals alike, absent a rational basis for differential treatment.

41. Respondents' application of mandatory detention without individualized review treats Petitioner — a noncitizen who lawfully presented herself at a port of entry, was formally granted parole by ICE itself, and complied with every legal obligation imposed upon her for over two years — in a manner that is demonstrably more punitive than the treatment afforded to noncitizens who entered the United States without inspection or authorization, evaded the immigration system entirely, and were never subject to any Order of Supervision. Unlike those individuals, who upon eventual apprehension are afforded individualized bond hearings under 8 U.S.C. § 1226(a) at which a neutral adjudicator considers their individual circumstances before any deprivation of liberty, Petitioner — who did everything right — has been subjected to categorical mandatory detention without any individualized hearing whatsoever.

This disparity is not merely inequitable. It is constitutionally irrational. The government cannot, consistent with the Fifth Amendment's guarantee of equal protection, devise a detention scheme that systematically rewards evasion of the immigration system with greater procedural protections than it affords to those who honored it. A noncitizen who entered without inspection, evaded detection for years, and was ultimately apprehended receives an individualized hearing before a neutral adjudicator. Petitioner, who presented herself at a lawful port of entry, was granted parole by ICE Officer J. Alvarez, submitted her Form I-589 through the lawful channels established by Congress, reported to every single ICE check-in appointment without fail, and appeared voluntarily at the very appointment at which she was detained, receives none. There is no rational basis — let alone a constitutionally sufficient one — for this result.

42. Independently, and in the alternative, even if this Court were to set aside the manner of Petitioner's entry as a distinguishing factor, Petitioner remains identically situated to noncitizens detained under § 1226(a) in every respect that is constitutionally and legally relevant to the detention determination itself:

a. Both are noncitizens present in the United States without lawful permanent status and subject to removal proceedings before an Immigration Judge;

b. Both are pursuing the same forms of relief from removal — including asylum, withholding of removal, and protection under the Convention Against Torture — before the same Immigration Court;

c. Both present identical profiles with respect to the only two factors that constitutionally justify civil preventive detention: flight risk and danger to the community. Petitioner presents neither. No individualized assessment has ever found otherwise;

d. Both have the same length of presence in the United States, the same quality of family ties — including, in Petitioner's case, an active duty United States Army servicemember — the same community connections, and the same demonstrated history of compliance with immigration obligations; and

e. The sole factor that distinguishes Petitioner from a § 1226(a) detainee who receives an individualized bond hearing as a matter of right is the statutory label ICE has applied based exclusively on her manner of entry over two years ago — a historical administrative classification that reflects nothing about her current circumstances, her actual flight risk, or any danger she poses to the community.

The manner of entry two years ago is, by definition, constitutionally insufficient to justify categorical detention today. It tells a court nothing about whether this specific individual, standing before it now, with two years of documented compliance, zero criminal history, deep family ties to the United States, and a pending asylum application, poses any flight risk or danger whatsoever. That is precisely why § 1226(a) mandates individualized hearings — because categorical rules based on historical classifications, untethered from current individual circumstances, are the paradigm of arbitrary government action that the Equal Protection Clause forbids. To apply a different and harsher rule to Petitioner based solely on that historical label, while ignoring the unimpeachable record she has built over two years, violates equal protection under the Fifth Amendment.

43. Indeed, the manner of entry 2 years ago tells us nothing about current flight risk or danger, which is why ICE conducts individualized assessments when deciding whether to detain or release under §1226(a).

44. The government's asserted interest in "equal treatment" of noncitizens at the border and in the interior cannot justify this arbitrary classification:

a. First, that interest relates to uniformity in removal proceedings (covered by §1225(a)(1)'s definition of "applicant for admission"), not detention;

b. Second, even if relevant to detention, it does not explain why long-term residents should be treated identically to recent border crossers; and

c. Third, it does not explain why manner of entry years ago should control over a current, proven lack of flight risk.

45. This classification violates equal protection because it treats identically situated individuals differently based on an arbitrary factor unrelated to any legitimate government interest.

**D. Arbitrary and Capricious Government Action: Detention After Prolonged Non-Enforcement**

46. The Due Process Clause prohibits arbitrary government action. County of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998) (due process protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective").

47. The government's sudden decision to detain Petitioner after 2 years of non-enforcement, with no change whatsoever in her individual circumstances, constitutes arbitrary government action.

48. During 2 years of physical presence in the United States, Petitioner built an established life in reasonable reliance on her circumstances:

a. Petitioner maintained continuous residence at the same address for 2 years;

b. Petitioner established deep family ties;

c. Petitioner had zero criminal arrests, charges, or convictions during this period;

d. Petitioner was never identified as a flight risk or danger by any government authority; and

49. The government's prolonged non-enforcement over 2 years, combined with Petitioner's complete compliance with all applicable laws during that period, demonstrates that Petitioner presents no flight risk or danger—the only constitutionally permissible bases for civil preventive detention. Salerno, 481 U.S. at 748.

50. Now, with no change in Petitioner's individual circumstances — no new criminal conduct, no missed ICE check-in appointment, no violation of her Order of Supervision, no change in family ties, and no denial of bond by any neutral adjudicator — the Government has detained her based solely on ICE officers' unilateral and unlawful objection to the distance of her court-ordered Immigration Court hearing date of November 17, 2027, in a transparent and impermissible attempt to interfere with proceedings exclusively within the jurisdiction of the Immigration Court. This is the paradigm of arbitrary and unconstitutional executive action:

a. It punishes a law-abiding individual for ICE's own unlawful interference with Immigration Court proceedings, rather than any conduct or circumstance attributable to Petitioner herself;

b. It ignores over two years of unimpeachable evidence — perfect ICE check-in compliance, no criminal record, active asylum application, and consistent cooperation with immigration authorities — demonstrating conclusively that Petitioner presents no flight risk or danger to the community whatsoever;

c. It treats Petitioner's exemplary, law-abiding conduct, her formal parole granted by ICE Officer J. Alvarez, and her active pending Form I-589 before the Immigration Court as wholly irrelevant to the detention determination;

d. It fails to serve any individualized governmental interest, as nothing about Petitioner's personal circumstances — her compliance record, her family ties including an active duty United States Army servicemember, her pending asylum application, or her court-ordered hearing date — supports detention; and

e. It produces an outcome — the detention of a fully compliant, law-abiding individual with over two years of perfect supervision compliance, zero law violations, a pending asylum application, and a court-ordered hearing date, apprehended at a routine check-in she voluntarily attended — that no reasonable application of the Government's stated detention interests can justify, and that the Constitution unequivocally forbids.

51. The government's sudden decision to detain Petitioner — after two years of non-enforcement, with no change whatsoever in her individual circumstances, based solely on ICE officers' unilateral objection to the distance of her court-ordered hearing date of November 17, 2027 — is precisely the type of arbitrary executive action that the Due Process Clause forbids. County of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998). Petitioner's two years of perfect compliance, zero criminal history, and consistent cooperation with immigration authorities at every stage of her supervision demonstrate conclusively that her detention serves no legitimate individualized governmental interest. Because Respondents have detained her without any rational justification grounded in her actual individual circumstances, and without any individualized determination by any neutral adjudicator, her continued detention constitutes arbitrary and capricious government action in direct violation of the Fifth Amendment's guarantee of due process.

### E. As-Applied Constitutional Challenge

52. Even if §1225(b)(2)(A) could be constitutionally applied to some individuals in some circumstances, its application to Petitioner violates the Constitution.

53. Petitioner presents the precise scenario where mandatory detention without a hearing cannot be constitutionally sustained:

a. Long-term U.S. resident 2 years with deep community and family ties;

b. Government engaged in 2 years of non-enforcement, during which Petitioner demonstrated zero flight risk or danger;

c. Proven track record of compliance with all applicable laws, eliminating any individualized flight risk or danger concern;

d. Indefinite detention with no timeline for completion of proceedings;

e. A strong and meritorious case for relief from removal, including a pending Form I-589 Application for Asylum, Withholding of Removal, and protection under the Convention Against Torture, currently pending adjudication before the Immigration Court in a consolidated family case with a court-ordered hearing scheduled for November 17, 2027;

f. Severe, irreparable harm from continued detention; and

g. Detention based solely on ICE's unlawful interference with Immigration Court proceedings and unilateral objection to Petitioner's court-ordered hearing date — not on any individualized finding of flight risk, danger to the community, or any other legitimate basis cognizable under the Constitution or the INA.

54.  Courts have recognized that prolonged mandatory detention under 8 U.S.C. §1225(b)(2)(A), without meaningful individualized review, raises serious constitutional concerns under the Fifth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Those concerns are no longer speculative in Petitioner's case, where Respondents continue to detain Petitioner without any individualized determination regarding flight risk or danger to the community.

55. Petitioner's case presents precisely the constitutional concerns identified in cases involving prolonged detention without meaningful individualized review. Under the circumstances presented here, Respondents' continued detention of Petitioner without any individualized determination regarding flight risk or danger violates the Fifth Amendment's guarantee of due process.

56. For all these reasons, Petitioner's continued detention violates the Fifth Amendment's guarantee of due process and equal protection.

## V. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Declare that Petitioner's continued detention violates the Fifth Amendment to the United States Constitution;

b. Issue a Writ of Habeas Corpus ordering Petitioner's immediate release from custody, subject to reasonable conditions of supervision including GPS monitoring, regular ICE check-ins,

surrender of travel documents, and/or reasonable bond;

c. Alternatively, order Respondents to provide Petitioner with an individualized hearing before a neutral decision-maker within seven (7) days, at which Petitioner may demonstrate she is neither a flight risk nor a danger to the community, and at which the decision-maker has authority to order release on bond or conditions of supervision;

d. Enjoin Respondents from continuing to detain Petitioner in violation of her constitutional rights;

e. Order a stay of removal proceedings pending resolution of this petition;

f. Award costs and attorney's fees pursuant to 28 U.S.C. §2412 and other applicable law; and

g. Grant such other and further relief as the Court deems just and proper.

## VI. VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

By: /s/ Nicholas H. Kyle
Nicholas H. Kyle, Esq.
Law Offices of Nicholas H. Kyle, LLC
135 W. Griggs Ave.
Las Cruces, NM 88001
nhkylelaw@gmail.com
575.277.9688

## CERTIFICATE OF SERVICE

On June 15, 2026, Counsel for Petitioner served a copy of the attached Petition via U.S. Mail in compliance with Rule 4 of the Federal Rules of Civil Procedure upon The Respondent Warden, Otero County Processing Center 26 Mcgregor Range Road, Chaparral, Nm 88081

/s/ Nicholas Kyle                                              June 15, 2026

Nicholas Kyle                                                    Date

Attorney for Petitioner

## CERTIFICATE OF SERVICE

On June 15, 2026, Counsel for Plaintiff served a copy of the attached Petition via USPS Mail, in compliance with Rule 4 of Federal Rules of Civil Procedure, upon the Respondent, Mary De Anda-Ybarra, in her Official Capacity as Field Office Director, of ICE Enforcement and Removal Operations of El Paso Field Office, 11541 Montana Avenue Suite E El Paso Texas 79936.

/s/ Nicholas Kyle                                              June 15, 2026

Nicholas Kyle                                                    Date

Attorney for Petitioner

## CERTIFICATE OF SERVICE

On June 15, 2026, Counsel for Plaintiff served a copy of the attached Petition via USPS Mail, in compliance with Rule 4 of Federal Rules of Civil Procedure, upon the Respondent, MARKWAYNE MULLIN, in his Official Capacity as Secretary of U.S. Department of Homeland Security, at (1) Office of General Counsel, U.S. Department of Homeland Security, 245 Murray Lane, SW, Mail Stop 0485, Washington, D.C. 20530.

/s/ Nicholas Kyle                                              June 15, 2026

Nicholas Kyle                                                    Date

Attorney for Petitioner

## CERTIFICATE OF SERVICE

On June 15, 2026, Counsel for Plaintiff served a copy of the attached Petition via email, in compliance with Rule 4 of Federal Rules of Civil Procedure, upon the Respondent, Todd Blanche, in his Official Capacity as Acting Attorney General of the United States, at Office of the Attorney General, 950 Pennsylvania Avenue, NW Washington, DC 20530.


/s/ Nicholas Kyle
Nicholas Kyle                                                        June 15, 2026
Attorney for Petitioner                                             Date